IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARK W. DUBUQUE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 4:17-cv-2401 |
| § | |
| THE BOEING COMPANY, § | |
| § | |
| Defendant. § | |

## NOTICE OF REMOVAL

### I.
#### INTRODUCTION

On August 21, 2017, Plaintiff filed his Petition in Missouri state court against The Boeing Company. Plaintiff's lawsuit focuses squarely on Boeing's duties and obligations as a military defense contractor, and Boeing's work with the U.S. Government. The Constitution vests exclusively to the federal government – to the exclusion of the States – matters related to the common defense of the nation. Although the Petition is creatively pleaded in an attempt to avoid federal courts, it is so pervaded with questions of federal law that it must be litigated in federal court. Consequently, this matter should proceed in the U.S. District Courts, not the Circuit Court of St. Louis County.

This Court has jurisdiction, and the case is removable, on three separate grounds. *First*, because the lawsuit will require the Court to resolve substantial questions of federal law, this Court has federal question jurisdiction under 28 U.S.C. § 1331. *Second*, the Court has jurisdiction under federal officer removal statute, 28 U.S.C. § 1442. *Third*, the Court has diversity jurisdiction under 28 U.S.C. § 1332.

Therefore, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442 and 1446, Defendant The Boeing Company hereby gives notice of the removal of the above-styled action to this Court from the Circuit Court of St. Louis County, State of Missouri. In support of its Notice of Removal, Defendant states as follows:

## II.
### PROCEDURAL HISTORY

1. The action styled *Mark W. Dubuque v. The Boeing Company,* Case No. 17SL-CC03042, was filed in the Circuit Court of St. Louis County, State of Missouri, on or about August 21, 2017.

2. Defendant Boeing was served with a copy of the summons and Petition on August 24, 2017. Boeing filed this Notice of Removal on September 12, 2017.

3. This Notice of Removal is timely under 28 U.S.C. § 1446(b).

4. Venue of this civil action is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1441(a).

5. The state court action is removable because this Court has jurisdiction based on federal question, the federal officer removal statute, and diversity.

## III.
### SUMMARY OF THE FACTS

6. Plaintiff is a former employee of Defendant The Boeing Company, a private contractor administering highly classified programs for the U.S. Government relating to military defense and national security. *See* Plaintiff's Petition, ¶¶ 3, 7-8. In his Petition, Plaintiff alleges that, up until December 2013, he worked on highly-classified projects for Boeing which required him to hold Special Access Program clearances – a classification created by federal law that

2

establishes security protocols, safeguards, and access restrictions for certain highly classified projects. *See* Petition ¶¶ 8, 9 and 11.

7.  Plaintiff alleges that on or about November 26, 2013, he was interrogated on Boeing's property by two federal agents from the United States Air Force Office of Special Investigations (the "Air Force"). Petition ¶ 35.

8.  Plaintiff claims the Air Force was investigating perceived security risks related to Plaintiff's improper relationships with a third-party vendor, the disclosure of classified information by Plaintiff, and the deletion of documents from Plaintiff's computer. *See* Petition ¶¶ 35 and 37.

9.  In December 2013, the Air Force suspended Plaintiff's Special Access Program clearances, and two years later Plaintiff's clearances are still suspended. Petition ¶ 38.

10. Plaintiff further alleges that, in 2015, "Boeing began demanding" that he be debriefed on his Special Access Programs in a "classified . . . room." *See* Petition ¶ 61.

11. Plaintiff alleges Boeing was and is not authorized to debrief him, due to the Air Force's investigation and suspension of his clearances. Petition ¶ 62.

12. Plaintiff further alleges that Boeing is liable for wrongful discharge and emotional distress Plaintiff allegedly suffered because of the Air Force investigation and subsequent discharge. *See* Petition ¶ 107.

13. Plaintiff asks the Court to award the following remedies: (1) damages for wrongful discharge; (2) damages for emotional distress; (3) punitive damages; and (4) attorneys' fees. *See* Petition ¶¶ 107-108.

## IV.
## APPLICABLE FEDERAL LAW RELATING TO NATIONAL DEFENSE

14. In order to safeguard and restrict access to highly classified information relating to the national security of the United States, the U.S. Government has implemented a detailed scheme of laws, Department of Defense regulations, Presidential Executive Orders and rules which strictly regulate the secrecy of programs administered by federal defense contractors.

15. These federal rules and regulations include, among others, the United States Executive Branch's National Industrial Security Program (Executive Order 12829, as amended), the authority to administer Special Access Programs involving highly-classified information (*see* 32 C.F.R. § 154.17), and the discretion delegated to federal agencies and their contractors to determine whether individuals are qualified to access sensitive, highly-classified information, and to report suspicious behavior that may pose security threats to classified state secrets and programs.

16. Special Access Programs are security protocols established by U.S. Government that provide heightened safeguards and access restrictions for certain classified information and/or programs. "A Special Access program is any program designed to control access, distribution, and protection of particularly sensitive information established pursuant to section 4–2 of Executive Order 12356 and prior Orders." 32 C.F.R. § 154.17.

17. The regulations identify several types of Special Access Programs, including programs associated with nuclear and chemical weapons, NATO classified information, and Presidential support activities. *See* 32 C.F.R. § 154.17.

18. It is well-established that the granting of a security clearance, including Special Access Program privileges, is "a sensitive and inherently discretionary judgment call" that is

"committed by law to the appropriate agency of the Executive Branch" and emanates from the President's Constitutional authority "to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information . . .." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988).

19. Likewise, Boeing's authority to administer, grant, and deny Special Access Program privileges to access highly-classified information and programs is "derived solely from its contract" with its Federal agency customers. Boeing's authority with regard to Special Access Programs is delegated to it by Federal agencies operating under the Executive Branch of the U.S. Government. Therefore, there is "no compelling reason to treat the security clearance decision by Boeing differently than the similar decision made by the Air Force." *Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994).

20. Finally, Boeing has an obligation under applicable Federal security program requirements to report adverse information coming to its attention regarding any of its cleared employees, including suspicious contacts with third parties. *See, e.g.*, U.S. Department of Defense (DOD) Manual 5220.22-M, National Industrial Security Program Operating Manual, Section 3; Executive Order 12829. This includes an obligation to report to the U.S. Government "any information that may impact ability of individuals to maintain their eligibility or properly safeguard SAP information," such as security incidents or reportable contacts with third parties. *See, e.g.*, Department of Defense Manual 5205.07, Vol. 2 (Nov. 24, 2015).

21. Thus, Defendant's decisions regarding the administration of security clearances, including reporting of potential security-related risks, is governed by the Executive Branch's policies and practices for safeguarding state secrets and administering the National Industrial

Security Program. *See, e.g.*, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

## V.
### FEDERAL QUESTION JURISDICTION *28 U.S.C. § 1331*

22. Under long-familiar principles, a case "arises under federal law" within the meaning of 28 U.S.C. § 1331 if "the plaintiff's right to relief necessarily depends on a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). As the Supreme Court explained in *Grable & Sons Mental Prods., Inc. v. Darue Eng'g & Mfg.*, "federal question jurisdiction will lie over state-law claims that implicate ***significant federal issues.***" 545 U.S. 308, 312 (2005) (emphasis added). Federal jurisdiction is appropriate where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial . . . ." *Id.* at 314. "[A] federal court ought to be able to hear claims recognized under state law that nonetheless turn on ***substantial questions of federal law***, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *In re Nat'l Sec. Agency Telecommunications Records Litig.*, 483 F. Supp. 2d 934, 941 (N.D. Cal. 2007).

23. Notwithstanding Plaintiff's pleading of state law in his Petition, it is apparent that substantial questions of federal law predominate this matter. Plaintiff's Petition will require the Court to analyze and determine Plaintiff's and Boeing's legal duties and obligations with regard to, among other things: (i) administering classified information and clearances, (ii) reporting adverse information to the federal government, (iii) cooperating in investigations conducted by the United States Air Force, and (iv) debriefing employees who work on classified programs.

24. Thus, all of the claims in Plaintiff's Petition present the Court with issues that are exclusively governed by federal law and which will require the Court to determine the parties' legal duties and obligations under federal law.[1]

25. Consequently, due to the substantial questions of federal law presented in Plaintiff's Petition, this Court also has jurisdiction based on federal question under 28 U.S.C. § 1442.

## VI.
### JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE
*28 U.S.C. § 1442(a)(1)*

26. This case is removable solely on the basis of the federal question, and the Court need not inquire further into whether it has jurisdiction over the matter.

27. But should the Court choose to do so, it would find that it also has original jurisdiction over this action pursuant to 28 U.S.C. § 1442.

28. Generally, the well-pleaded complaint rule precludes a defense grounded in federal law from serving as a basis for invoking a court's federal question jurisdiction. 28 U.S.C. §§ 1331, 1332.

29. The federal officer removal statute is an exception to the well-pleaded complaint rule. *Mesa v. California*, 482 U.S. 386, 392 (1987). Under the statute, an action filed in state court may be removed to a U.S. District Court if the action is brought "against or directed to ... any officer. . . of the United States. . . in an official or individual capacity, for or relating to any act under color of such office. . . ." *See* 28 U.S.C. § 1442(a)(1).

---

[1] Alternatively, if the Court concludes that only some of Plaintiff's claims raise a substantial federal question, the Court should exercise supplemental jurisdiction over Plaintiff's remaining claims because the claims are "so related ... that they form part of the same case or controversy." *See* 28 U.S.C. § 1367.

7

30. The federal officer removal statute "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012).

31. "Government contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." *Id.* at 1231.

32. As this Court (Judge Shaw) has recognized, "[T]he paradigm case in which a private actor has succeeded in removing cases under the statute have involved government contractors with limited discretion." *McCarthy v. Webster Univ.*, 2013 WL 4502603, at *3 (E.D. Mo. Aug. 22, 2013).

33. In addition, the federal officer removal statute "provides for the removal of an entire 'civil action,' so removal is not limited only to specific qualifying claims." *Stephenson v. Nassif*, 2015 WL 9450614, at *2 (E.D. Va. Dec. 21, 2015). "Because Section 1442(a)(1) authorizes federal removal of the entire case even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction." *Id.* (quoting 14C Wright & Miller, Federal Practice and Procedure § 3726 at 275 (2009)).

34. As the U.S. Supreme Court has explained, the statute must be "liberally construed." *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). "[T]he broad language of § 1442(a)(1) must be applied in a manner that effectuates the central congressional policy of securing a federal forum for persons who assist the federal government in a manner that risks the imposition of state law liability." *Stephenson*, 2015 WL 9450614, at *3.

35. The Eighth Circuit has established a four-part test to determine if a case may be

      removed to federal court under § 1442(a)(1):

        (1)    a defendant acted under the direction of a federal officer;
        (2)    there was a causal connection between the defendant's actions and the official authority;
        (3)    the defendant has a colorable federal defense to the plaintiff's claims; and
        (4)    the defendant is a "person," within the meaning of the statute.

*Jacks*, 701 F.3d at 1230.

      36.    "[The federal officer removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense. . . . The officer need not win his case before he can have it removed." *Id.* at 1235 (quoting *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969)).

      37.    In this case, removal is proper because all the required elements are met. **First**, Boeing is a military defense contractor acting under the direction of the U.S. Government and numerous federal agencies. **Second**, the actions alleged in Plaintiff's Petition were purportedly caused by Boeing's duties with regard to, among other things, (i) administering classified information and clearances, (ii) reporting adverse information to the federal government, (iii) cooperating in investigations conducted by the United States Air Force, and (iv) debriefing employees who work on classified programs. **Third**, Boeing has a colorable federal defense because federal law governs and dictates Boeing's actions with regard to the issues and allegations identified in Plaintiff's Complaint. **Fourth**, federal contractors and their agents and employees are "persons" within the meaning of the statute.

      38.    In sum, removal under 28 U.S.C. § 1442 is proper because Plaintiff's lawsuit will require the Court to analyze and determine Boeing's duties and obligations as a federal contractor with regard to administering classified information, reporting adverse information to the federal government, and debriefing employees who work on classified programs. *See, e.g.*,

*Stephenson v. Nassif*, 2015 WL 9450614, at *5 (denying motion to remand, and holding removal was proper under § 1442(a)(1) where an employee of a federal defense contractor filed state law claims against his supervisor for allegedly making a false report concerning the employee to the Department of Defense).

39. Therefore, removal is proper and this Court has jurisdiction over this entire action under 28 U.S.C. § 1442.

## VII.
### DIVERSITY JURISDICTION 28 U.S.C. § 1332

Finally, there is a third independent basis for this Court to exercise jurisdiction, because all of the legitimate parties are citizens of different states and the amount in controversy exceeds $75,000.

**A.    There is complete diversity because Plaintiff is a Missouri citizen, and the Defendant is a citizen of Illinois and Delaware.**

40. Plaintiff is a citizen of Missouri and The Boeing Company is a citizen of Illinois and Delaware. Thus, there is complete diversity between Plaintiff (Missouri) and Defendant Boeing (Illinois / Delaware). *See* 28 U.S.C. § 1332(a)(1).

**B.    The amount in controversy exceeds $75,000.**

41. In addition, Plaintiff seeks an unspecified amount of damages that will exceed the $75,000 minimum jurisdictional amount of 28 U.S.C. § 1332.

42. In his Petition, Plaintiff seeks damages in several different forms, the sum of which far exceeds $75,000: (1) damages for wrongful discharge; (2) damages for emotional distress; (3) punitive damages; and (4) attorneys' fees.

43. Plaintiff's annual salary at the time of his termination was $138,000.

10

44. **Second**, Plaintiff also alleges he was subjected to emotional distress and is asking the Court to award him damages for (1) lost past and future income and compensation; (2) lost past and future benefits of employment; (3) significant emotional and mental distress and medical bills; and (4) back pay and front pay.  *See* Petition ¶¶ 107-108.

45. Plaintiff was terminated on February 29, 2016.  *See* Petition ¶¶ 94 and 98.

46. For each of his claims, Plaintiff asks the Court to award "damages in an amount exceeding $25,000.00." *See* Petition at the Prayer.

47. Compensatory damages for emotional distress often exceed $75,000. *See, e.g.*, *Wilkinson v. United States*, 564 F.3d 927, 935 (8th Cir. 2009) (affirming award of $232,407 for intentional infliction of emotional distress); *Ross v. Douglas County, Nebraska*, 234 F.3d 391, 397 (8th Cir. 2000) ($100,000 for emotional distress not excessive).

48. **Third**, Plaintiff also asks the Court to award punitive damages for alleged intentional, outrageous and malicious conduct by Boeing designed with an evil motive or reckless indifference. *See* Petition ¶ 108. Requests for punitive damages often result in large punitive damages awards. *See, e.g., Denesha v. Farmers Insurance Exchange*, 161 F.3d 491, 504 (8th Cir. 1998) (finding that an award of punitive damages in the amount of $700,000 was appropriate); *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854 (Mo. App. E.D. 2009) ($325,000 in punitive damages was appropriate).

49. **Fourth** – and finally – Plaintiff also requests attorney's fees. *See* Petition at the Prayer. If Plaintiff prevails on his claims at trial, it is reasonably certain that his attorney's fees will exceed $75,000. *Campos v. City of Blue Springs, Missouri*, 289 F.3d 546, 553 (8th Cir. 2002) ($79,238.70 in attorneys' fees awarded to prevailing plaintiff); *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1052 (8th Cir. 2002) ($168,551.78 in attorneys' fees and

$14,700.79 in costs); *Kline v. City of Kansas City, Mo. Fire Dept.*, 245 F.3d 707, 708 (8th Cir. 2001) ($277,900 in attorneys' fees); *Arneson v. Callahan*, 128 F.3d 1243, 1248 (8th Cir. 1997) ($178,610 in attorneys' fees).

50. Moreover, on April 10, 2015, Plaintiff's counsel previously requested that Boeing pay $15,144.50 in costs associated with Plaintiff's retention of counsel with regard to the Air Force's investigation. Plaintiff's attorneys' fees will have only increased since April 2015. *Burnham v. Summers*, 2009 WL 2231677 (E.D. Mo. July 24, 2009) ("[S]ettlement demands can be used by courts in weighing whether a removing defendant has established by a preponderance w[h]ether the amount in controversy has been met.")

51. Accordingly, there is "legal certainty" that, if Plaintiff prevails on his claims, his damages and attorney's fees will exceed $75,000 and the jurisdictional amount in controversy requirement is met.

52. Because the parties are citizens of different states and the amount in controversy exceeds $75,000, this Court also has jurisdiction under 28 U.S.C. §1332.

## VIII.
### CONCLUSION

53. Pursuant to 28 U.S.C. § 1446(d), Defendant has given written notice of its filing of this Notice to counsel for Plaintiff. Defendant will also promptly file a copy of this Notice with the Circuit Court of St. Louis County, State of Missouri.

54. As stated above, Boeing has been served with a copy of the summons or Complaint. Boeing has not yet answered. Pursuant to 28 U.S.C. 1446(a), copies of all process, pleadings, and orders filed in the Circuit Court of St. Louis County are attached to this Notice as Exhibit A.

WHEREFORE, Defendant The Boeing Company, by and through its counsel, desiring to remove this civil action of the United States District Court for the Eastern District of Missouri, Eastern Division, pray that the filing of this Petition and for Notice of Removal, the giving of written notice thereof to Plaintiff, and the filing of a copy of this Petition for the Notice of Removal with the clerk of the Circuit Court of St. Louis County, State of Missouri, shall effect the removal of said civil action to this Honorable Court.

Dated: September 12, 2017

Of Counsel:

MORGAN, LEWIS, & BOCKIUS, LLP

*Pending admittance pro hac vice:*

Ethel Johnson, TX Bar No. 10714050
Sarah Morton, TX Bar No. 24066151
1000 Louisiana Street, Suite 4000
Houston, TX  77002
T:  (713) 890-5000
F:  (713) 890-5001
ethel.johnson@morganlewis.com
sarah.morton@morganlewis.com

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*/s/ Andrew L. Metcalf*
Gregg M. Lemley, #44464MO
Andrew L. Metcalf, #66079
7700 Bonhomme Avenue, Suite 650
St. Louis, Missouri 63105
Phone:  (314) 802-3935
Facsimile:  (314) 802-3936
Gregg.Lemley@ogletree.com
Andrew.Metcalf@ogletree.com

ATTORNEYS FOR DEFENDANT THE BOEING COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was mailed on September 12, 2017 via the first class mail, postage prepaid, to the following:

Drey A. Cooley
Sanford J. Boxerman
Capes, Sokol, Goodman & Sarachan, P.C.
7701 Forsyth Blvd., 12th Floor

13

DB1/ 93532912.1

St. Louis, MO 63105  
cooley@capessokol.com  
boxerman@capessokol.com

*/s/ Andrew L. Metcalf*
Attorney for Defendants

31184207.1